[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants in this personal injury action arising out of a motor vehicle collision have moved to strike many of the counts in the plaintiffs' thirty-five count complaint. The motions to strike first challenge as legally insufficient the eighteen counts in which the plaintiff Mark Ammerman's three minor children seek damages for loss of paternal consortium resulting from the injuries to their father.
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 152; Ferryman v.Groton, 212 Conn. 138, 142 (1989). The motion to strike admits all facts well pleaded; Cyr v. Brookfield, 153 Conn. 261, 263
(1965); and the allegations are to be given the same favorable construction as a trier of fact would be required to give in admitting evidence under them. Benson v. Housing Authority,145 Conn. 196, 199 (1958). Facts necessarily implied by the allegations in a complaint are sufficiently pleaded and need not be expressly alleged. Bouchard v. People's Bank, 219 Conn. 465,471 (1991). If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action, the complaint is not vulnerable to a motion to strike.Bouchard v. People's Bank, supra, 471; Senior v. Hope,156 Conn. 92, 97-98 (1968).
In 1979, the Connecticut Supreme Court overruled its earlier ruling in Marri v. Stamford Street Railroad Co.,84 Conn. 9 (1911), and held that each spouse has a claim for loss of consortium arising from personal injury to the other spouse caused by the negligence of a third person. Hopson v. St.Mary's Hospital, 176 Conn. 485, 496 (1979). In the years afterHopson, our trial courts began to see the filing of claims by parents for loss of filial consortium and claims by children for loss of parental consortium. The first reported decision on the issue of whether a claim for loss of parental consortium is CT Page 12329 recognized by our courts was Clark v. Romeo, 561 F. Sup. 1209
(1983), where Judge Zampano held that minors do not have a cause of action for loss of parental consortium.
Since Clark v. Romeo, there have been numerous Superior Court decisions as to whether loss of consortium in a parent-child relationship is a recognized cause of action. The memoranda of the parties in this case detail the numerous trial court decisions on this issue and note the split of authority which has developed. Our Supreme Court has not ruled on the issue. Nor has our Appellate Court, which noted in 1988 that, "No appellate court case has yet addressed squarely the issue of whether, under any circumstances, a cause of action for the loss of filial consortium lies." Mahoney v. Lensink, 17 Conn. App. 130,141, n. 7 (1988), rev'd. on other grounds, 213 Conn. 548
(1990). It is true that the Appellate Court has stated, "The right to consortium is said to arise out of the civil contract of marriage and as such, does not extend to the parent-child relationship. " Id., 141. That statement constitutes only dicta, however, because the Appellate Court first found that the plaintiffs' loss of consortium claim was bared by sovereign immunity. Id.
A review of the many Superior Court decisions on this issue persuades this court that the better-reasoned view is to recognize a cause of action for loss of parental consortium. The reasoning and analysis which led our Supreme Court to recognize a cause of action for loss of marital consortium inHopson should be logically extended to the analogous claim for loss of parental consortium. The court finds the reasoning of two decisions particularly persuasive. They are Kizina v.Minier, Superior Court, JD of Waterbury, DN. 0993755 Conn. L. Rptr. 481 (January 24, 1992) and Shabazz v. Price, Superior Court, JD of New Haven at New Haven, DN. 93-0353763 11 Conn. L. Rptr. 331
(April 22, 1994), and the court adopts the reasoning of those cases as its own. The motions to strike the children's claims for loss of parental consortium on the ground that the cause of action is not recognized are denied.
The defendants next move to strike those counts of the complaint which set forth consortium claims by the wife and children of the plaintiff Mark Ammerman and seek double or treble damages under General Statutes § 14-295. The defendants contend that a loss of consortium claim is a purely derivative claim and therefore does not constitute a "personal injury" CT Page 12330 claim for the purpose of General Statutes § 14-295.
General Statutes § 14-295 provides:
 In any civil action to recover damages resulting from personal injury, wrongful death or damage to property, the trier of fact may award double or treble damages if the injured party has specifically pleaded that another party has deliberately or with reckless disregard operated a motor vehicle in violation of Section 14-218a, 14-219, 14-222, 14-227a, 14-230, 14-234, 14-239 or 14-240a and that such violation was a substantial factor in causing such injury, death or damage to property.
(Emphasis added.) In making their claim, the defendants fail to address the Supreme Court ruling in Izzo v. Colonial Penn Ins.Co., 203 Conn. 305 (1987).
The issue in Izzo was whether a loss of consortium claim fell within the limits of liability for "bodily injury to one person" so as to make the "per person" limit of an insurance policy applicable to the consortium claim. Citing Hopson, the Supreme Court held that loss of consortium, although a separate cause of action, is a derivative action "inextricably attached to the claim of the injured spouse." Id., 312. The loss of consortium claim therefore was found to be within the "per person" limit of coverage because it is a loss sustained "because of bodily injury to one person."
In discussing decisions on this issue from other jurisdictions, the court noted that some insurance policies speak of "personal injury" rather than "bodily injury." The court distinguished decisions where the policies in question used the term "physical injury" rather than "bodily injury:"
 The term "personal injury" is broad enough to encompass a claim for injury which is personal to the claimant, although flowing from the physical injury of another. It has been said that the term "bodily injury," however, is narrower in that it connotes an element of personal contact . . . A claim of loss of consortium, although a "personal injury," is not a "bodily injury" to the claimant. CT Page 12331
Id., 313.
The Supreme Court having ruled that a consortium claim is a "personal injury," it is, therefore, a claim within the purview of General Statutes 14-295. The defendants' motions to strike are denied insofar as they claim that Section 14-295 does not apply to consortium claims.
The defendants' third claim in their motions to strike is that counts twenty-six through thirty-five of the complaint are legally insufficient in alleging strict liability based on a violation of General Statutes § 14-80h because a violation of that statute does not give rise to a claim based on strict liability. Paragraph five of these counts of the complaint alleges:
 Said occurrence was due to the failure of the defendants to maintain the braking system on said vehicle in good working order, as required by Section 14-80h of the General Statutes, or to otherwise meet the requirements of said Statute, and by so violating said statute, the defendants are strictly liable for the injuries and damages hereinafter set forth.
General Statutes § 14-80h, entitled "Brake equipment of motor vehicles," provides in relevant part:
 Each braking system, including any power assist devices used to reduce operator braking effort, shall be maintained in good working order at all times.
The plaintiffs acknowledge that the counts in question allege causes of action in strict liability for violation of Section 14-80h. For support of such a cause of action, they rely on Gore v. People's Savings Bank, 35 Conn. App. 126 (1994), cert. granted 231 Conn. 923 (1994), where the Appellate Court discussed the distinction between negligence per se and strict liability and held that a section of the landlord and tenant act which proscribes the use of lead-based paint imposed strict liability on the landlord. Very recently, the Connecticut Supreme Court released its decision in the appeal of Gore v.People's Savings Bank, reversing the Appellate Court decision.Gore v. People's Savings Bank, 235 Conn. 360 (1995). CT Page 12332
The Supreme Court begins its analysis in Gore by accepting the Appellate Court's description of the distinction between negligence per se and strict liability. The key difference is that negligence per se permits excuses for violations of a statute whereas strict liability does not permit excuses. Id., 369, n. 10, and 376. "In cases involving the doctrine of negligence per se, however, the defendant ordinarily may avoid liability upon proof of a valid excuse or justification." Id., 376. The Supreme Court further noted the frequency of negligence per se claims in relation to violation of motor vehicle statutes. Id., 378.
The Supreme Court reversed the Appellate Court's conclusion, however, that the landlord-tenant statute in question provided for strict liability because the statute did not specifically provide for excuses. Id., 382.
 A court's interpretation that a statute provides for negligence per se ordinarily does not lead to the further conclusion that the statute prohibits excuses . . . the Appellate Court should have reasoned that notice was relevant to the plaintiffs' action unless the legislature had expressly removed notice considerations from the action.
Id., 382-383.
Application of this same reasoning to the statute in question, Section 14-80h, results in the conclusion that a violation of the statute does not give rise to a cause of action in strict liability. Section 14-80h does not expressly preclude excuses or justification for a violation of the statute. The statute is silent in this regard and, therefore, the court finds that it cannot provide the basis for a cause of action in strict liability. As the Supreme Court stated,
 the legislature knows how to create strict liability when it chooses to do so; see, e.g., General Statutes § 22-357 (providing that dog owners "shall be liable" for damage to any person's body or property caused by dog); . . . there is nothing to indicate that it chose to do so in this case.
Id., 389. CT Page 12333
The defendants' motions to strike counts twenty-six through thirty-five of the complaint are granted.